IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHOOSING JUSTICE INITIATIVE, and CAROL DAWN DEANER, | ) ) ) |
| Plaintiffs, | ) ) NO. 3:20-cv-00745 |
| v. | ) ) JUDGE CAMPBELL |
| FLOYD FLIPPIN et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Before the Court is Plaintiff's Second Motion for a Preliminary Injunction (Doc. No. 25) and Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. No. 31). Defendants filed a response to the motion for preliminary injunction. (Doc. No. 30). Plaintiffs consolidated the reply in support of the motion for preliminary injunction and response to the motion to dismiss. (Doc. No. 36). Defendants filed a reply. (Doc. No. 36). Both motions are fully briefed.

### I. BACKGROUND

Plaintiff Carol Dawn Deaner, a former public defender, founded the Choosing Justice Initiative ("CJI") in 2018. One of the goals of CJI is to "improve the quality of indigent defense representation in Tennessee by changing how attorneys are appointed to represent poor people." (Am. Compl., Doc. No. 22 at ¶ 2). Plaintiffs claim that the current system in which judges appoint defense counsel for indigent defendants makes it "nearly impossible" for defendants who have a constitutionally ineffective court-appointed lawyer to obtain a new lawyer without outside help. (*Id*. at 4). Plaintiffs seek to provide this outside help, in part, by speaking with defendants who are dissatisfied with their court-appointed representation, identifying attorneys available to provide

"constitutionally adequate and effective representation," and seeking to have the newly identified attorneys appointed in place of the existing court-appointed counsel. (*Id*. at ¶¶ 3-6).

In September 2019, Plaintiffs were contacted by a criminal defendant who was dissatisfied with his appointed representation. The defendant, whose cases were in Tennessee criminal court before Judge Cheryl A. Blackburn, retained CJI to represent him *pro bono*. (*Id*. at ¶¶ 27, 34). CJI's representation was limited to assisting the defendant with a motion to substitute counsel. (*Id*. at ¶ 34). Ms. Deaner filed two motions in the defendant's criminal cases. (*Id*. at ¶ 35). The first was a motion for leave to enter a limited notice of appearance. (*Id*.). The second was a motion for appointment of substitute counsel. (*Id*.).

On November 13, 2019, Judge Blackburn held a hearing at which she denied Ms. Deaner's motion for leave to enter a limited notice of appearance and ordered her "not to talk to any criminal defendant in this court unless you get permission from the attorney."[1] (*Id*. at ¶ 40, 44; *see also*, Doc. No. 18-2 at PageID# 267-68). Judge Blackburn also issued a written opinion stating the basis for her order and clarifying that Ms. Deaner was ordered not to "talk to any represented defendant in this Court unless she obtains permission from their current counsel as required by [Rule of Professional Conduct] 4.2, so as to not interfere with attorney-client relationship [sic]." (Doc. No. 18-2 at PageID # 225; *see also* Am. Compl., Doc. No. 22 at ¶ 44).

Judge Blackburn thereafter filed a referral against Ms. Deaner with the Tennessee Board of Professional Responsibility of the Supreme Court of Tennessee ("Board"). (Doc. No. 22 at ¶

---

[1] After Ms. Deaner filed the two motions, the defendant's appointed attorney moved to withdraw, claiming that his ability to effectively represent the defendant had been undermined by Ms. Deaner discussing the quality of his representation with the defendant. (Doc. No. 18-2 at PageID# 242-43). Judge Blackburn granted the motion to withdraw and appointed a new attorney to represent the defendant. (Id. at PageID# 244-46).

2

47; Doc. No. 18-2). She sent the Board the filings and hearing transcripts related to Ms. Deaner's motions and directed attention to the written order that "summarizes [her] concerns." (*See* J. Blackburn Letter to the Board of Professional Responsibility (Nov. 25, 2019), Doc. No. 18-2 at 1). Among the "concerns" raised were that Ms. Deaner was without standing to file motions in the criminal case, made "numerous disparaging allegations against court-appointed counsel's representation" in an open forum, distributed misleading information regarding the ability of indigent defendants to choose court-appointed counsel, interfered with the trial court's authority to appoint counsel, and communicated with and filed a notice of appearance on behalf of a represented party without authorization of his existing counsel implicating Tennessee Rule of Professional Conduct 4.2, Tenn. Sup. Ct. R. 8, RPC 4.2.[2] (Doc. No. 18-2 at PageID# 204-225).

On December 4, 2019, the Board's chief disciplinary counsel notified Ms. Deaner of the disciplinary complaint filed by Judge Blackburn. (Doc. No. 22 at ¶ 48). On December 17, 2019, Ms. Deaner was notified that a second similar complaint had been filed by the defendant's original court-appointed attorney and another attorney. (*Id*. at ¶ 49). On January 9, 2020, Ms. Deaner responded to the complaints, arguing, among other things, that she did not violate Rule 4.2 because when she communicated with the defendant she was not representing another party in that matter. (*Id*.).

---

[2] Judge Blackburn explicitly declined to make any findings as to whether Ms. Deaner violated any ethical obligations. (Doc. No. 18-2 at PageID# 205, 213, 225).

RPC 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of representation with a person the lawyer knows to be representing by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Tenn. Sup. Ct. R. 8, RPC 4.2.

3

On July 10, 2020, the Board of Professional Responsibility issued a notice of "diversion," which stated:

> Prior to the filing of this disciplinary complaint, you established and operated Choice Lawyer Project (hereinafter, "CLP"), a Tennessee public benefit corporation. While acting on behalf of CLP, you communicated with a represented criminal defendant without the permission of his counsel in violation of RPC 4.2. You subsequently filed a pleading on behalf of the same defendant even though his attorney was still counsel of record. As you were not counsel for the defendant, you lacked standing to file the pleading and thereby pursued a legal objective without any substantive basis in fact or law in violation of RPC 3.1. In mitigation, your conduct caused no harm to the defendant, their counsel, or to the proceedings. You also have no prior discipline in twenty-four (24) years of practice.

(Doc. No. 18-4). The chief disciplinary counsel of the Board stated that the complaint against her would be dismissed upon completion of three hours of ethics continuing legal education. (*Id.*). She added, "This offer of diversion is in recognition of your lack of prior discipline within the past five years and in hopes that resolution in this manner will cause you to avoid such violations in the future." (*Id.*).

On August 11, 2020, Ms. Deaner declined the Board's offer of diversion. (Doc. No. 22 at ¶ 56). She argued that the conduct does not violate RPC 4.2 and that if RPC 4.2 is interpreted to bar her conduct, it is unconstitutional as applied to her and any lawyer who engages in similar conduct. (*Id.*). Ms. Deaner wrote that she hopes "the Board will conclude that my conduct did not violate RPC 4.2 or 3.1, and that RPC 4.2 protects the right of every person in need of representation – including represented indigent criminal defendants – to seek and obtain freely the advice of other disinterested attorneys." (Doc. No. 18-5).

Upon rejection of the offer of diversion, the matter was returned to the Board for further proceedings under Tenn. Sup. Ct. R. 9. On September 1, 2020, Plaintiffs filed the instant action against the Board and Judge Cheryl Blackburn seeking: (1) a declaratory judgment that Judge's

4

Blackburn's order that Deaner not communicate with represented parties unless she first "obtains permission from their current counsel as required by RPC 4.2" is an unconstitutional prior restraint on her speech; and enjoining the Board from "enforcing RPC 4.2 against Deaner or any other CJI attorney if they communicate with represented parties in the future for purposes of representing them pro bono." (Doc. No. 1).

After Plaintiffs filed the instant action, at its quarterly meeting on September 11, 2020, the Board adopted the following "clarification" for its position on Ms. Deaner's disciplinary complaint:

> In light of the substance of Ms. Deaner's lawsuit and the injunctive relief sought, the Board hereby adopts this statement to clarify the basis for its position that Ms. Deaner violated the Rules of Professional Conduct. Contrary to the claims made in Ms. Deaner's lawsuit, the Board did not conclude that Ms. Deaner violated any ethical rules solely by speaking with a prospective client who was dissatisfied with his current counsel for the purpose of determining whether the undertake the representation. Rather, the Board's recommended diversion of Ms. Deaner's disciplinary complaint resulted from her subsequent conduct with the represented party and before the tribunal. On this basis, to any extent that Ms. Deaner seeks to enjoin the Board from prohibiting Ms. Deaner or her organization in speaking with prospective clients solely to determine whether to undertake the representation, such injunctive relief is unnecessary as the Board acknowledges that such conduct is proper under RPC 4.2, Comment 4.

(Christopher Aff., Doc. No. 18-3 at ¶ 11).

On September 23, 2020, Plaintiffs filed an amended complaint substituting Floyd Flippin and Sandy Garrett, Chair and Chief Disciplinary Counsel of the Board for the Board itself. (Doc. No. 22). Plaintiffs then filed a motion for preliminary injunction seeking a court order forbidding Flippin and Garrett from disciplining Ms. Deaner or any other employee of the Choosing Justice Initiative for communicating with any represented criminal defendant for purpose of representing that defendant pro bono. (Doc. No. 25).

5

Defendants argue the Court should abstain from review of the merits of this case under the doctrine in *Younger v. Harris*, 401 U.S. 37 (1971), or dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.  STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to Defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims.  *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (on a motion to dismiss the Court may consider documents referenced in a plaintiff's complaint that are central to plaintiff's claims, matters of which a court may take judicial notice, documents that are a matter of public record, and letters that constitute decisions of a government agency).  The Court has considered the record of the disciplinary proceedings before the Supreme Court of Tennessee and

the record of proceedings before Judge Blackburn as referred to in the Complaint and as public records.

### III. ANALYSIS

#### A. The *Younger v. Harris* Abstention Doctrine Bars Involvement in Pending Attorney Disciplinary Proceedings

"In *Younger*, the United States Supreme Court counseled federal courts to abstain from enjoining certain pending state court criminal proceedings." *Danner v. Bd of Prof'l Responsibility of the Tenn. Sup. Ct*, 277 F. App'x 575, 577 (6th Cir. 2008). "This doctrine is borne out of a 'proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. (quoting *Younger*, 401 U.S. at 44). The doctrine has been extended to ongoing civil proceedings and ongoing state administrative proceedings. *Id*. (citing *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975); *Middlesex Cty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). *Younger* counsels that a federal district court should abstain when: "(1) the underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding." *Danner*, 277 F. App'x at 578.

Plaintiffs argue that *Younger* abstention is inappropriate in this case because the pending disciplinary complaint and associated "open investigation" does not qualify as an "ongoing disciplinary proceeding." Plaintiffs argue that because the Board has not filed any formal disciplinary charges against Deaner and has not convened a hearing panel, there is no state administrative proceeding to which the Court must defer. Plaintiffs argue that "formal disciplinary proceedings" are not commenced until Disciplinary Counsel files a Petition for Discipline with the

7

Board. (Doc. No. 36 (citing Tenn. Sup. Ct. R. 9-15.2(a)). Plaintiffs further argue that while the disciplinary complaint is in "investigatory status," there is no forum in which she may argue her case.

State bar disciplinary proceeding are routinely held to satisfy the *Younger* abstention criteria. *See Danner*, 277 F. App'x at 578-79 (holding that bar disciplinary proceedings are "judicial in nature," implicate important state interests in the regulation and discipline of attorneys, and offer an adequate opportunity to raise constitutional challenges); *see also*, *Middlesex*, 457 U.S. at 425-27; *Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006); *Fieger v. Thomas*, 74 F.3d 740 (6th Cir. 1996); *Berger v. Cuyahoga Bar Ass'n*., 983 F.2d 718 (6th Cir. 1993).

The Court disagrees with Plaintiffs contention that only formal disciplinary proceedings qualify as an "ongoing judicial proceeding" from which the Court must abstain. As stated above, it is well-established that state bar disciplinary proceedings are "judicial proceedings" for purposes of *Younger* abstention, and the Court is unaware of any requirement of a "formal disciplinary complaint." To the contrary, the Sixth Circuit has affirmed abstention under *Younger* when the investigation had concluded, and the disciplinary complaint was still in draft form. *See Squire*, 469 F.3d at 555-56. Although not dispositive, in *Squire*, the court stated that disciplinary counsel's investigation of allegations of misconduct are an adjudicative function, noting that disciplinary counsel's appointment in Ohio is approved by the Ohio supreme court. *Id*. at 556.

In Tennessee, the chief disciplinary counsel is appointed by the Tennessee Supreme Court and granted authority to "investigate all matters involving possible misconduct." Tenn. Sup. Ct. R. 9, §§ 7.1 and 7.3. The Court finds no reason to conclude that the investigation is not judicial in nature and part of the disciplinary proceeding. *See also*, *Mason v. Dept. Disciplinary Committee of the Appellate Division of the Supreme Court of New York, First Judicial Department*, 894 F.2d

512 (2d Cir. 1990) (abstaining under *Younger* when plaintiff sought to enjoin a bar disciplinary investigation).

Moreover, the proceedings before the Board have progressed beyond investigation. After the complaints were filed, Ms. Deaner responded, the chief disciplinary counsel offered diversion of the complaints, and Ms. Deaner rejected the offer of diversion. That the complaints have been returned to the investigatory stage did not end the disciplinary proceedings or cause them to begin anew. *See* Tenn. Sup. Ct. R. 9, § 13.7; (*see also*, Doc. No. 18-5 at PageID# 278 (Deaner letter rejecting diversion acknowledges the matter would be returned for further proceedings under Tenn. Sup. Ct. R. 9)). The ongoing nature of the disciplinary complaint is even more evident where it appears the Board has not conclusively determined which of Ms. Deaner's actions violated professional ethics rules. In fact, the possibility remains that the Board will, upon more careful consideration of the Rules, decide to dismiss the complaint altogether.[3]

The Court, therefore, concludes that the disciplinary proceedings are both "judicial in nature" and "ongoing" for purposes of *Younger*. The final criteria for the Court's consideration is whether Ms. Deaner will have an adequate opportunity to raise constitutional challenges in the course of the ongoing proceeding. *Danner*, 277 F. App'x at 578.

Plaintiffs argue that because the matter has been returned to the investigative stage, Ms. Deaner does not yet have the right to a hearing and "[u]nless formal disciplinary proceedings are

---

[3] The Board determined that Ms. Deaner's communication with a represented criminal defendant without the permission of his counsel violated RPC 4.2. (See Doc. No. 18-4). The Board later stated that speaking with a represented criminal defendant for purposes of determining whether to undertake representation is proper under RPC 4.2 and that the Rules violations stemmed from unspecified "subsequent conduct with the represented party and before the tribunal." (Christopher Aff., Doc. No. 18-3 at ¶ 11). It thus appears to the Court that the Board has not conclusively determined either the scope of RPC 4.2 or that there was a sanctionable violation of the rule.

9

adopted or modified by the Board, there will be no hearing panel and no forum in which Plaintiffs may vindicate their constitutional rights." (Doc. No. 36 at 9-10).

Although the proceedings have not reached the point where Ms. Deaner is entitled to a hearing, unless the complaints are dismissed, she will have the opportunity to raise constitutional challenges to the application of RPC 4.2. *See Danner*, 277 F. App'x at 579-80; *see also* Tenn. Sup. Ct. R. 9, § 33.1(b) (specifically providing that a court may reverse or modify a Board decision if the hearing panel's "findings, inferences, conclusions, or decisions" are in violation of the Constitution).

Plaintiffs cite a series of cases that consider whether petitioners have Article III standing to raise a pre-enforcement challenge to a statute or regulation. *See Steffel v. Thompson*, 415 U.S. 452 (1974); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014); *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) (bar disciplinary proceeding was complete when plaintiff was issued a non-appealable warning letter and because plaintiff intended to engage in substantially similar conduct, the threat of prosecution was sufficiently concrete to confer standing); *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) (plaintiff had standing to challenge Ohio Dental Association regulation where he had been warned that his conduct violated the regulation and he intended to engage in such conduct in the future). These cases are inapposite as they address Article III standing, not *Younger* abstention. None of these cases involved ongoing enforcement proceedings at any level. In fact, in *Susan B. Anthony List*, the federal district court initially abstained under *Younger* and only proceeded to consider the case after the enforcement proceeding before the Ohio Election Commission had been dismissed.[4] *See* 573 U.S. at 155.

---

[4] The district court then found that the plaintiff lacked standing under Article III, a ruling which was ultimately overturned by the Supreme Court. *See* 573 U.S. at 168.

10

Plaintiffs also cite several cases in which the courts found the administrative proceedings in questions did not qualify as "ongoing state judicial proceedings" for purposes of *Younger* abstention. *See Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989); *La Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir. 1995); *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009). None of these cases persuade the Court that the proceedings before the Board in this case are not ongoing proceedings of a judicial nature.

*Telco* involved a challenge to a Virginia fundraising solicitation law while the plaintiff was being investigated by the Virginia Office of Consumer Affairs. The Fourth Circuit affirmed the district court's determination that *Younger* abstention was not warranted when the administrative agency had investigated the complaint but not filed formal charges in conformance with the state Administrative Process Act. *Id*. at 1228. The determination that the administrative investigation in *Telco* did not constitute an ongoing state proceeding that was judicial in nature has no application to the Court's consideration of the judicial nature of the bar disciplinary proceeding in this case. Not only did the proceeding in *Telco* involve different procedural requirements, the judicial nature of the investigatory stage of the bar disciplinary complaints in Tennessee is well established. *See Squire*, 469 F.3d 556.

*La. Debating & Literary Ass'n* is even less applicable. The case involved a challenge to a state non-discrimination law after an individual who was denied admission to several private clubs filed complaints of discrimination with the New Orleans Human Relations Commission. 42 F.3d at 1486. The Commission had given the plaintiffs notice of the complaints, but had not begun to investigate. *Id*. at 1490. The district court held that the complaint and notice of the complaint did not constitute an "ongoing state judicial proceeding," a determination the Fifth Circuit found not to constitute an abuse of discretion. *Id*. at 1490-91. Not only had the proceedings before the New

11

Orleans Human Relations Commission not progressed as far as those in this case, those proceedings are entirely different in nature than the attorney disciplinary proceedings at issue here and the judicial nature of the investigatory stage of the proceedings is not readily comparable to those of other state administrative bodies.

*Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009), which involved claims by owners of insurance company against the insurance commissioner of Puerto Rico during an ongoing misconduct investigation, but where formal charges had yet to be filed by the executive agency, is inapplicable for the same reasons.

The Court finds that the attorney disciplinary proceedings against Ms. Deaner are ongoing state judicial proceedings in which Ms. Deaner will have the opportunity to raise her constitutional claims. Accordingly, the Court will abstain under *Younger* from considering the claims against Floyd Flippin, Chair of the Board, and Sandy Garrett, Chief Disciplinary Counsel and the claims against these Defendants will be **DISMISSED WITHOUT PREJUDICE**.

**B. Prospective Enforcement of Rule 4.2**

Plaintiffs seek an order enjoining Ms. Garrett and Mr. Flippin from acting on behalf of the Board to enforce RPC 4.2 against Ms. Deaner or any other CJI attorney if they communicate with represented parties in the future for purposes of representing them pro bono. (Doc. No. 22 at PageID# 323-24). The Court notes that, as described in the complaint, Plaintiffs seek only to enjoin enforcement of Rule 4.2 with regard to a narrowly defined course of conduct. The wide-ranging activities undertaken or sought to be undertaken by Ms. Deaner and CJI is much broader that the conduct for which they seek to preclude disciplinary enforcement. The Court limits its review to the potential enforcement regarding this specific conduct.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const., Art. III, § 2. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact', (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 158 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An injury sufficient to satisfy Article III, must be 'concrete and particularized' and 'actual or imminent, not conjectural, or hypothetical.'" *Id*. The Supreme Court has stated that pre-enforcement review is permitted under circumstances "that render the threatened enforcement sufficiently imminent." *Id*. at 159.

Under the circumstances presented here, Plaintiffs have not established that they face an imminent threat of enforcement of Rule 4.2 for potential future communications with represented criminal defendants for purposes of representing them pro bono. The Board has stated that it does not interpret Rule 4.2 to prohibit such communications. While the Board's view of the entirety of Ms. Deaner's conduct – which was not limited to communications with a represented defendant to purposes of decided whether to undertake representation – has yet to be determined, there is no indication that Ms. Deaner or anyone else face potential disciplinary action solely based on this category of communications with represented parties. Future enforcement of Rule 4.2 against any attorney who communicates with represented parties in the future for purposes of representing them pro bono is speculative at best. Nothing in the Board's statement or conduct portends a credible threat of enforcement.

This case is distinguishable from those cited by Plaintiffs. In each of those cases the plaintiffs had been warned not to engage in specific conduct and they intended to continue to engage in such conduct. *See Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) (dentist who was

13

warned that he could not practice general dentistry if he advertised a specialty faced a credible threat of enforcement); *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) (attorney who was disciplined for circulating a letter critical of the state legislative ethics commission and intended to further disseminate copies the letter stated a credible threat of future enforcement). Here, Plaintiffs seek to enjoin enforcement regarding conduct the Board has specifically stated it does not view as a violation.

Accordingly, the claim against Mr. Flippin and Ms. Garrett, to the extent that it seeks to enjoin future enforcement of the Rule of Professional Conduct, will be **DISMISSED WITHOUT PREJUDICE**.

## C. Judge Blackburn's Order

Plaintiffs seek a declaratory judgement that Judge Blackburn's order that Ms. Deaner not communicate with represented parties without first obtaining permission from their existing counsel is an unconstitutional prior restraint on her speech. Plaintiffs claim that since Judge Blackburn issued the order on November 13, 2019, they have received two inquiries from people whose cases are pending in Judge Blackburn's court who are dissatisfied with their appointed counsel. (Doc. No. 22 at ¶ 61). Plaintiffs state that they have not responded to these people or communicated with anyone who is currently represented by appointed counsel out of concern for possible contempt sanctions and potential disciplinary action by the Board. (*Id*. at ¶¶ 62-63).

The Court has considerable concerns regarding the justiciability of the claim for declaratory judgment invalidating Judge Blackburn's order. Not only are the lower federal courts generally precluded from reviewing state court orders, this particular order involves Judge Blackburn's interpretation of Rule 4.2, which vis-à-vis Ms. Deaner's actions, is now before the Board of Professional Responsibility.

The Court will reserve ruling on the motion to dismiss the claim regarding the constitutionality of Judge Blackburn's order and will require additional briefing from the parties regarding justiciability of the claim.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. No. 31) is **GRANTED, in part**. Plaintiff's claim against Floyd S. Flippin and Sandy Garrett is **DISMISSED WITHOUT PREJUDICE**. Because the Motion for Preliminary Injunction (Doc. No. 25) involves only the claim against Mr. Flippin and Ms. Garrett, which has been dismissed, the Motion is **DENIED**. The Court reserves ruling on the motion to dismiss the claim against Judge Blackburn. As stated above, the parties will file additional briefing on the issue of justiciability of this claim.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE